Filed 9/23/14  In re S.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| In re S. T., a Person Coming Under the Juvenile Court Law. | C074236 |
| --- | --- |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>S. T.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 68581) |

The minor S. T. admitted allegations that he committed felony receiving stolen property, two counts of petit theft, two counts of prowling, and one count of misdemeanor vandalism.  The juvenile court declared the minor a ward of the court, removed him from parental custody, placed him in the care of the probation department pending a suitable placement, imposed various probation conditions, and awarded 284 days of predisposition custody credit.

1

The probation department filed a petition to modify the previous orders (Welf. & Inst. Code,[1] § 778) after the minor ran away from three placements since the disposition hearing. Following a contested hearing on the minor's motion to prevent out-of-state placement, the juvenile court placed the minor at the Clarinda Academy in Clarinda, Iowa.

On appeal, the minor contends the juvenile court abused its discretion and denied him due process in failing to grant a continuance at the hearing on out-of-state placement. The minor also contends the juvenile court failed to award precommitment credits. We shall order precommitment credits and affirm the judgment as modified.

BACKGROUND

We dispense with details of the minor's offenses as they are unnecessary to resolve this appeal.

The report for the initial disposition hearing was filed in September 2012. It noted the minor was born in January 2000. The minor had referrals for 29 offenses, including one for robbery and six for burglary.

The minor had been booked into juvenile hall 11 times for a total of 276 days of incarceration. He had 13 write ups for disobedience since his initial detention. The minor had been released to electronic monitoring on "numerous occasions," but accumulated six orders to show cause for going out of range, running away, leaving home without permission, or incurring new offenses.

The minor took several medications for mental health and had an extensive history with mental health issues. He was found incompetent at a March 2011 competency hearing and ordered to undergo competency training. The training was delayed due to the minor's new violation and failure to attend training, so he was not deemed competent

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

2

until August 2012. He had been diagnosed with ADHD (attention deficit hyperactivity disorder), mood disorder, and depression disorder. A psychiatrist, Dr. Gary Cavanaugh, completed two evaluations of the minor and believed he might have bipolar disorder. Dr. Cavanaugh summarized the minor's biggest problems as impulsivity, poor judgment, and repetitive behaviors which continue to bring him into contact with juvenile authorities.

The report included a statement from the mother who said: "It's very hard on me, I have tried everything." She believed her son's anxiety worsened when he was locked up. Since the minor was more impulsive at home, she believed placement out of home was best for him.

The probation department recommended placement in a residential treatment program. The minor's case would be reviewed and an appropriate placement would be determined from a wide variety of available services.

The juvenile court followed the probation department's recommendation at the October 2012 disposition hearing.

In April 2013, the probation department filed a petition to modify the previous dispositional orders. The petition alleged the minor ran away from his last three placements. The minor needed a highly structured program with extensive counseling and educational services that would address the minor's treatment needs. The petition strongly recommended the Clarinda Academy in Clarinda, Iowa, as no other programs in California met "the treatment needs of the minor with a structured environment that his behaviors require."

The minor filed a motion to prevent out-of-state placement and to modify the terms of probation. The written motion argued the probation department's criteria for selecting a particular group home were "shrouded in secrecy." It urged placement in a "meaningful program of rehabilitation" close to the minor's mother and identified one possible placement in Lathrop, California. The motion also attached a recent court

3

ordered psychological evaluation of the minor by Dr. Scott Jensen, which concluded that out-of-state placement was appropriate, and the minor's behavior was consistent with prior diagnosis of ADHD and conduct disorder. Dr. Jensen also found the minor would benefit most from a highly structured, but engaging environment.

The matter was continued on the minor's motion two times, to April 29, 2013, and then to May 9, 2013, in part to allow the minor to pursue discovery, other investigation, and coordinate witnesses.

The juvenile court ordered a supplemental report from the probation department regarding alternative placements. The report noted the 13-year-old minor already incurred 14 referrals for new violations of the law. In considering placement, the probation officer contacted the minor's mother, who said placement at home would not be in his best interest as there were so many people in the home trying to tell him what to do. The minor told the probation officer not to place him in Stockton[2] or he would abscond.

The minor was first placed at Warner Mountain Group Home in Canby, California, where he was terminated for aggressive behavior to staff and peers and leaving without permission. He was next placed in a facility in Palo Cedro, California, that was experienced in dealing with minors who had serious mental health needs. After he ran away and hitchhiked more than 200 miles to home, the minor was placed with Courage to Change in Exeter, California. Although this facility had experience dealing with youths with similar records, the minor was terminated after 19 incidents, including failing to follow staff, derogatory comments to staff and peers, and refusing to attend school. The minor was then directed to two other programs in California, but both rejected him due to his behavioral history.

---

[2]     The minor's mother lived in Stockton.

After the probation department found no other programs in California met the minor's treatment needs, it recommended placement with the Clarinda Academy in Iowa, which had already accepted him.

On May 9, 2013, the matter was continued again to May 16 at 1:30 p.m.

The hearing commenced at 2:00 p.m. on May 16. The juvenile court informed minor's counsel he had until 4:00 p.m. to present his evidence.

Minor's counsel told the court Dr. Cavanaugh would not be there until 2:30, so he called the probation officer, Theresa Roland. Counsel examined Roland regarding the minor's three prior placements, whether these placements could address his needs, and the minor's various mental health reports. Roland admitted there were records not in the minor's file, such as applications to placement facilities, the minor's eligibility paperwork, and the termination reports from the facilities, all of which were kept in a separate chronological file. Counsel also examined Roland concerning the decision to place the minor in the Iowa facility, the statutory preference for placement near the minor's home, and whether an Iowa placement would endanger the minor given his history of absconding. After further examination regarding the Clarinda Academy and other facilities, counsel asked to temporarily excuse Roland so Dr. Cavanaugh could testify.

Minor's counsel and county counsel examined and cross-examined Dr. Cavanaugh regarding the minor's mental health issues. Minor's counsel also questioned Dr. Cavanaugh on the extent of the minor's previous mental health testing and how long it would take to design a treatment plan for him. After Dr. Cavanaugh was excused, minor's counsel continued examining Roland. The examination primarily addressed why alternative placements were rejected, the psychiatric care available at the Clarinda Academy, the availability of in-state placements, and the process for determining where a minor is placed.

The juvenile court then informed minor's counsel that his two hours were up. Counsel asked the court for more time as he had other witnesses to call. The juvenile court replied: "You spent two hours drilling her on different placements. And I gave you two hours, so I'm not going to allow you to have them." Counsel made an offer of proof that there was a supplemental report from the probation officer which asserts for the first time that the minor was initially placed in Modoc County because his mother thought he should be placed outside the home. Mother would testify she never made such a statement. Counsel also stated he just received a "well over an inch" thick file regarding the minor's placement, in spite of repeated previous requests for such information. Counsel told the juvenile court he wanted time to review the file to determine whether it contained any evidence relevant to the minor's placement in Iowa. Counsel concluded by accusing the probation department of "deliberately hiding the ball regarding their placement procedures."

The juvenile court noted this was not the first mention of the mother's statement, as it was said "many times" at the first disposition hearing that mother could not control the minor at home. Continuing, the court told counsel he had over a month to prepare for the hearing and the request for a continuance was denied.

Minor's counsel responded that he had prepared for the hearing. Nonetheless, he has a "binder here with several, multiple subdivisions regarding what I perceive to be the issues" regarding the minor's proposed placement, and that it was very difficult to coordinate all of the witnesses he wished to call. The juvenile court countered: "No. I gave you two hours and you chose to question Ms. Roland for over an hour and a half, and I'm not giving you anymore time . . . . I don't think you used your time wisely when you knew you had those other witnesses waiting. You didn't get right to the point with her."

Counsel replied that the witness was evasive, but the juvenile court disagreed. After county counsel declined to present any additional evidence, the matter proceeded to argument and the juvenile court's decision.

DISCUSSION

I

*Denial Of A Continuance*

The minor contends it was an abuse of discretion and a deprivation of due process for the juvenile court to deny his request for a continuance upon the expiration of the two-hour time limit. We disagree.

"The grant or denial of a motion for a continuance rests within the sound discretion of the trial judge [citations]. The trial court's decision whether or not to grant a continuance will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Lawanda L.* (1986) 178 Cal.App.3d 423, 428.)

The minor argues Roland's testimony established she was not aware of the minor's mental health needs because she only reviewed one out of the five psychological reports on the minor and was not aware of Dr. Cavanaugh's report. The minor finds additional support for this conclusion in Roland's testimony that she was unaware that the minor "had severe ADHD or symptoms of emerging bipolar disorder" even though she had his probation file. He also notes the juvenile court found Roland's motion to modify placement was inadequate and ordered the probation department to prepare a supplemental report addressing out-of-state placement and the minor's mental health needs. According to the minor, Roland's testimony supported counsel's allegation that probation was "hiding the ball regarding placements" and thus justified giving counsel more time to study the newly acquired placement file. Concluding, the minor claims the recent discovery of additional material evidence justified a continuance so that counsel could study it and thus prepare an adequate defense for his client.

7

Here counsel examined witnesses for the two hours allotted for the hearing and then mentioned for the first time a need for a continuance to allow counsel to examine newly acquired evidence. Any claim that the juvenile court should have continued the matter to another day to allow counsel to examine the newly found placement file is forfeited by counsel's failure to address the issue at the outset of the hearing. (Welf. & Inst. Code, § 682, subd. (a).)

We also find the minor did not establish good cause to extend the allotted time for additional examination. The matter had already been continued several times, primarily at the request of minor's counsel. The minor did not object to the two-hour time limit when informed of that limit at the beginning of the hearing. The juvenile court's observation that counsel did not use the allotted time well is consistent with our review of the record. It was not an abuse of discretion for the trial court to deny a continuance for additional time caused by counsel's failure to use the allotted time efficiently.

II

*Custody Credits*

The minor contends the juvenile court failed to award precommitment custody credits at the final disposition. The People agree.

Juveniles are entitled to precommitment credit for time spent in custody. (*In re Eric J.* (1979) 25 Cal.3d 522, 536; *In re Ricky H.* (1981) 30 Cal.3d 176, 184.) While the juvenile court awarded these credits at the initial commitment, it did not award precommitment credits after committing the minor to the Clarinda Academy.

The minor served 284 days of custody before the initial disposition order. He was in custody awaiting the initial placement from October 4, 2012, through November 7, 2012, a total of 34 days. The minor was in juvenile hall again from December 13, 2012, through January 8, 2013, awaiting placement after absconding from the first placement. This equals 27 days. The minor was again in juvenile hall awaiting his third placement from January 23, 2013, through February 4, 2013, a total of 13 days. The minor was in

8

custody awaiting the Iowa placement from February 11, 2013, through May 16, 2013, a total of 95 days. Finally, at a June 27, 2013, placement review hearing, the probation officer informed the juvenile court that the minor had been placed in the Clarinda Academy on June 19, 2013. Although the minor had been in custody since the juvenile court ordered the placement, the juvenile court awarded no credits. He was entitled to 33 days for the time he spent awaiting final placement from May 17, 2013, to June 18, 2013.

The minor served a total of 486 days of precommitment custody. We shall modify the judgment to award 486 days of credit and order an amendment to the dispositional order.

DISPOSITION

The judgment is modified to award the minor 486 days' precommitment credits. As modified, the judgment is affirmed. The juvenile court is directed to prepare an amended dispositional order reflecting the award of credits and to forward a certified copy of the amended order to the Clarinda Academy in Clarinda, Iowa, and to any other relevant authorities.

                                        ROBIE         , J.

We concur:

      BLEASE       , Acting P. J.

      MAURO       , J.